**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
                                      :
CANADA LIFE ASSURANCE COMPANY:
                                      :
              Plaintiff,             :      Civ. No. 06-3800 (GEB)
                                      :
          v.                          :      MEMORANDUM OPINION
                                      :
CONVERIUM RUCKVERSICHERUNG           :
(DEUTSCHLAND) AG                      :
                                      :
              Defendant.             :
                                      :
```

**BROWN, Chief Judge**

This matter comes before the Court upon defendant Converium Ruckversicherung (Deutschland) AG's ("Converium") motion to dismiss plaintiff Canada Life Assurance Company's ("Canada Life") Verified Petition.  The Court has jurisdiction over this matter pursuant to 9 U.S.C. § 203.  The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will deny Converium's motion to dismiss the Verified Petition, quash service on Willkie Farr & Gallagher, LLP ("Willkie Farr"), order Canada Life to effect service on Converium in accordance with the Federal Rules of Civil Procedure ("FRCP") Rule 4(h) within fifteen (15) days from the date herewith, and stay the present action pending resolution of the parallel Canada action.

1

I.      BACKGROUND

Canada Life and Converium were parties to certain reinsurance arrangements that experienced losses as a result of the September 11th attack on the World Trade Centers. (Converium Brief at 3).  A dispute developed regarding the scope of Converium's liability under these arrangements.  *Id.*  The parties submitted their dispute to arbitration.  *Id.* at 5.  The arbitration panel consisted of three reinsurance industry professionals.  *Id.*  Canada Life and Converium each selected an arbitrator to serve on the panel, and the two arbitrators chose Robert Huggins to serve as the umpire.  (Canada Life Brief at 1).

The arbitration hearing was originally scheduled to take place in Toronto, Canada, where Canada Life maintains its headquarters.  *Id.*  However, it was relocated to New Jersey at the request of Mr. Huggins so that he could be near his home and healthcare providers who were treating his brain tumor.  *Id.*  The hearing commenced on July 11, 2005, and lasted for 10 days. (Converium Brief at 5).  The Final Award, which reaffirmed Converium's position, was issued on May 12, 2006.  *Id.*

Canada Life alleges that while Mr. Huggins represented that his tumor had completely disappeared, it was actually growing in size.  (Canada Life Brief at 1).  Canada Life also alleges that for nine-months following the hearing, Mr. Huggins failed to respond to telephone calls and emails from his fellow arbitrators.  On May 9, 2006, shortly before the Final Award was issued, Canada Life filed an action in the Ontario Superior Court of Justice (the "Canada action"), seeking to have Mr. Huggins terminated on the grounds that he was incapable of performing as a competent, impartial umpire.  *Id.*  After Canada Life received the Final Award, it amended its complaint to also request that the Final Award be vacated and a new arbitration be convened.  *Id.*

Converium has appeared before the Ontario Court without objecting to its jurisdiction. (Converium Brief at 6).  The parties have also conducted discovery: Canada Life served multiple affidavits, sought the production of documents from parties and non-parties, and secured an agreement to receive medical documents from Mr. Huggins.  *Id.*  That action was scheduled for trial on May 7, 2007.  *Id.*  However, the parties informed the Court during the June 5, 2007, telephone conference that the trial was rescheduled for September of 2007.

On August 11, 2006, Canada Life commenced the present action by filing a Verified Petition to Vacate the Arbitration Award, which is based on the same core facts and seeks the same relief as the Canadian action filed three months earlier.  (Converium Brief at 7).  Canada Life also seeks a declaration that Canada is the legal situs of the arbitration.  It alleges that it filed the present action because Converium has attempted to reserve the ability to argue that New Jersey is the legal situs of the arbitration.  (Canada Life Brief at 3-4).  Canada Life explains that if New Jersey is held to be the legal situs of the arbitration, then the Ontario Court may not have the jurisdiction to vacate the Final Award.  *Id.*  At that point, Canada Life may be prevented by the Federal Arbitration Act's ("FAA") statute of limitations, 9 U.S.C. § 12, from seeking the same relief in this Court.  *Id.*

Canada Life has not served Converium with the Verified Petition.  (Converium Brief at 7-9); (Canada Life Brief at 13-14).  Rather, Canada Life attempted to effect service on Converium by serving Willkie Farr, Converium's counsel in the arbitration as well as the present action.  *Id*; *see also* December 6, 2006, Letter from Liza Walsh to the Court ("The undersigned, along with Willkie Farr . . ., represent Converium . . . in the referenced action.").  On August 11, 2006,

3

Canada Life's process server  personally served Wilkie Farr with the Notice of Filing and the

Verified Petition.  (Canada Life Brief at 13).  C. Benites, who according to Converium is a

mailroom clerk and not a Willkie Farr employee, accepted the service on Wilkie Farr's behalf.

(Converium Brief at 7); (Canada Life Brief at 13).  On August 14, 2006, Canada Life attempted

to serve Converium a second time.  (Canada Life Brief at 13-14).  That time a United States

Marshal in the Southern District of New York personally served Wilkie Farr with the Notice and

the Verified Petition.  *Id.*  Laura E. Arnold, a clerk in the Managing Attorney's Office, accepted

the service.  (Converium at 7); (Canada Life at 14).  Canada Life did not include a summons with

the service.  (Converium Brief at 7); (Canada Life Brief at 18-21).

        At this Court's request, Canada Life prepared a stipulation agreeing to voluntarily

dismiss the present action in exchange for Converium's agreement that Canada is the legal situs

of the arbitration.  (Canada Life Brief at 2).  Converium refused to sign the stipulation.  On

January 5, 2007, Converium filed the present motion to dismiss Canada Life's Petition pursuant

to Fed. R. Civ. P. 12(b)(5) for insufficient service of process, Fed. R. Civ. P. 12(b)(2) for lack of

personal jurisdiction resulting from insufficient service of process, Fed. R. Civ. P. 12(b)(4) for

insufficiency of process and pursuant to international comity.  Briefing on the matter now

complete, the Court will address the pending motion.

## II.      DISCUSSION

### A.      Service of Process

#### 1.      The Parties' Arguments

First, Converium argues that this action should be dismissed pursuant to Rule 12(b)(5) for

4

insufficient service of process.  (Converium Brief at 9).  Converium explains that Fed R. Civ. P.
4 governs the service of process in this action.  *Id* at 9-11; (Reply Brief at 3-6).  While Rule 4
permits service of process upon the defendant's agent, Converium never expressly or impliedly
authorized Willkie Farr to accept service on its behalf.  *Id.* at 12.  Converium argues that,
contrary to Canada Life's assertions, it never named Willkie Farr as its agent in the reinsurance
agreements executed in 2000.  *Id.* at 12; (Reply Brief at 7).  These agreements consist of two
three-page slips, each containing a one-line reference to a service of suit clause.  (Alpert Aff. Ex.
B, attached to Converium's Brief).  Specifically, the reference states, "Service of Suit Clause
(only if unlicensed)."  Converium argues that neither the agreements nor any subsequent writing
ever elaborated on that one-line reference.  (Reply Brief at 7).  Further, those agreements could
not have named Willkie Farr as Converium's agent because they were entered into several
months before Converium retained Willkie Farr as its counsel.  (Converium Brief at 12).

Second, Converium argues that this action should be dismissed pursuant to Rule 12(b)(2)
for lack of personal jurisdiction, because proper service of process is a prerequisite to the
exercise of personal jurisdiction over a defendant.  *Id.* at 13.  Third, Converium argues that this
action should be dismissed pursuant to Rule 12(b)(4) for insufficient process, because Canada
Life never served a summons on Converium or even Willkie Farr.  *Id.* at 13-14.

Canada Life argues that it commenced this action pursuant to the Convention on the
Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 9 U.S.C. § 201 *et
seq*., ("Convention") and its implementing statutes.  (Canada Life Brief at 12).  The
implementing statutes provide that the FAA's procedures for service of process govern this
action.  *Id.*  Canada Life argues that its service on Willkie Farr satisfied Section 12 of the FAA,

which permits service on the defendant's attorney and does not necessitate the service of a summons. *Id.* at 12, 19-20.

Canada Life rejects the position that Rule 4 governs. *Id.* at 14-17. However, it argues that even if Rule 4 does govern, there is a factual dispute regarding whether Converium appointed Willkie Farr as its agent for service of process in the 2000 reinsurance agreements. *Id.* at 17-18. Canada Life argues that pursuant to accepted industry practice, reinsurance policies issued by foreign corporations frequently contain service of suit clauses appointing an agent for service of process in connection with any related litigation. *Id.* at 18. Canada Life then makes two assumptions, without reference to any supporting law. *Id.* First, it assumes that the service of suit clauses in the 2000 reinsurance agreements implicitly appoint an agent authorized to accept service on Converium's behalf. Second, it assumes that Willkie Farr ought to be regarded as the appointed agent because it is Converium's arbitration and litigation counsel. *Id.*

## 2.     Applicable Law

While Section 12 of the FAA may govern service of process of a motion to vacate an arbitration award on a domestic corporation, Rule 4 governs service of such a motion on a foreign corporation. *In re Arbitration Between InterCarbon Bermuda, Ltd. & Caltex Trading & Transp. Corp.*, 146 F.R.D. 64, 66-68 (S.D.N.Y. 1993).

*Intercarbon* is the seminal case on this issue. Intercarbon sought to vacate an arbitration award granted in Caltex's favor. *Id.* at 66. Both parties where foreign companies that had participated in an arbitration within the United States. *Id.* The issue before that court was whether the notice of petition "sent by mail from InterCarbon's New York attorneys to [Caltex's]

6

New York attorneys, pursuant to section 12 of the FAA, constituted sufficient service of process. *Id.*

The court explained that Sections 1-12 of the FAA govern service of process to the extent they do not conflict with the Convention.  *Id.* at 67.  The court found that although "Section 12 does not squarely conflict with . . . the Convention, . . . neither does it give any direction for service on a foreign party."  *Id.*  The court described Section 12 as "an anachronism not only because it cannot account for the internationalization of arbitration law subsequent to its enactment, but also because it cannot account for the subsequent abandonment of United States marshals as routine process servers."  *Id.* at 67 n.3.  The court concluded that service of a motion to vacate on a foreign party is governed by Rule 4.  *Id.* 67-68.

While this is an issue of first impression for this Court, numerous other courts and treatises have embraced *InterCarbon's* holding.  *See Hancor, Inc. v. R & R Eng'g Prods., Inc.*, 381 F. Supp. 2d 12, 15 (D.P.R. 2005) (service of process of motion to confirm arbitration award on a foreign party is governed by the FRCP rather than the FAA); *In re Arbitration Between Trans Chem. Ltd. & China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 299-300 (S.D. Tex. 1997), *aff'd,* 161 F.3d 314 (5th Cir. 1998) (same); 62B Am. Jur. 2d *Process* § 314 (service of motion to vacate on foreign party governed by FRCP); 3 Fed. Proc., L. Ed. § 4:138 (same).

Rule 4(h) governs service of process on a foreign corporation.  It provides two means of effecting service.  Of these, Rule 4(h)(1) is relevant to the present action.[1]  Pursuant to Rule

---

[1]The second means delineated in Rule 4(h)(2) provides that service may be effected "in a place not within any jurisdictional district of the United States in any manner prescribed for individuals by subdivision (f) except personal delivery . . . ."  It is not relevant because there is no evidence that Canada Life attempted to serve Converium outside of the United States.

4(h)(1), service can be effected either "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process" or by complying with State service of process requirements as described in Rule 4(e)(1).  Rule 4(e)(1) allows service in accordance with the "law of the state in which the district court is located, or in which service is effected."

New Jersey Court Rule 4:4-4(a)(6) provides:

> The primary method of obtaining in personam jurisdiction over a defendant in this State is by causing the summons and complaint to be personally serviced within this State . . . [u]pon a corporation, by serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law.

Additionally, service was attempted in New York.  Similar to the New Jersey Rule, Section 311(a)(1) of the New York Civil Practice Law and Rules provides, in relevant part, that "[p]ersonal service upon a corporation or governmental subdivision shall be made by delivering the summons . . . upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or to any other agent authorized by appointment or by law to receive service."

The common threads among the FRCP, and the New Jersey and New York rules are the requirements that the summons must be served along with the complaint and that these may be

8

served on a third party only if that party is an agent authorized by the defendant, or by law, to receive service of process.

Rules 12(b)(2), (4) and (5) permit dismissal of an action based on a defect in the process or service of process.  However, these do not mandate dismissal.  Rather, Fed. R. Civ. P. 4(m) provides that upon finding that either the process or the service of process was insufficient, a court has the discretion to either dismiss the action without prejudice or to quash service and order the plaintiff to effect service within a specified time.  *See, e.g., Dimensional Communications, Inc. v. OZ Optics Ltd.*, 218 F.Supp.2d 653, 655 (D.N.J. 2002).  This Court has held that "[d]ismissal for insufficient service of process is not warranted . . . where plaintiffs are not culpable and there has been no indication of prejudice to the defendant."  *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, 2006 U.S. Dist. LEXIS 45762, *13-14 (D.N.J. Apr. 24, 2006) (citing 5A Wright & Miller, Federal Practice & Procedure § 1353 at 342 (3d ed. 2005)).

Similarly, the *InterCarbon* court held that while service of process in that action did not comply with Rule 4, the insufficiency did not warrant dismissal.  146 F.R.D. at 71.  The court noted that in the context of arbitration, service of process rules must be enforced more liberally. *Id.*  The court stated, "imperfect service of process in an arbitration case may not be fatal where jurisdiction over the arbitration is clear and where notice is sufficient to apprise the opposing party of the action being taken."  Also, the court found it particularly significant that "Caltraport has suffered no significant prejudice by InterCarbon's failure to adhere to proper methods of service."  *Id.*

### 3.      The Present Action is not Subject to Dismissal

Canada Life's process and service of process did not comply with the requirements of Rule 4(h).  Canada Life's only argument regarding its compliance with Rule 4(h) is its assumption that Converium must have designated Willkie Farr as its agent for service of process by executing the 2000 reinsurance agreements.  Canada Life's assumption is not supported by law or logic; therefore, the Court finds it incredible.  Further, Canada Life does not dispute that it failed to serve a summons.

Even though Canada Life's process and service of process were defective, dismissal of this action is not warranted for the following reasons:  First, Converium has proffered no evidence suggesting that it was prejudiced by Canada Life's omissions, and the Court finds no evidence of prejudice on the record.  Second, Canada Life effected service compliant with the FAA based on a genuine belief that the FAA governs, and the Court finds that its actions were not culpable.  Third, Converium did receive actual notice of this action as evidenced by the November 9, 2006, entry of appearance by its local counsel on its behalf.  Therefore, the Court will use its discretion pursuant to Rule 4(m) to quash the service of the Verified Petition on Willkie Farr and direct Canada Life to effect service on Converium in accordance with Rule 4(h) within fifteen (15) days from the date hereof.

While the parties have not challenged this Court's jurisdiction over the arbitration, Converium has indicated that it may dispute the legal situs of the arbitration, which may effect this Court's jurisdiction.  However, any potential ambiguity is cured by the stay of this action pending the resolution of the parallel Canada action.  *See infra*, at 13-16.  If it is determined in the Canada or the present action that this Court has jurisdiction over the arbitration, then it will

adjudicate Canada Life's outstanding claims.

### B.    International Comity

#### 1.    The Parties' Arguments

Converium argues that the present action should be dismissed based on international comity. (Converium Brief at 16-19). It argues that the previously filed Canada action is parallel to the present action because both involve the same parties and the same issues, including whether the Final Award should be vacated and which location is the legal situs of the arbitration. *Id.* at 18. Converium also argues that the "extraordinary circumstances" delineated in *Hay Acquisition Co. v. Bernd Schneider*, 2005 U.S. Dist. LEXIS 24490, at *37-38 (E.D. Pa. Apr. 27, 2005), which the Court should consider in its international comity analysis, favor dismissal. *Id.* at 17. The parties' arguments regarding these are considered on pages 14-16 *infra*.

Canada Life has proffered three arguments in response: First, it argues that international comity does not apply because it is not clear which court has jurisdiction over its claims. (Canada Life Brief at 3-5). Second, Canada Life argues that the *Hay Acquisition* factors do not favor dismissal. *Id.* at 8-9. These arguments are considered on pages 14-16 *infra*. Third, Canada Life argues that dismissal would be contrary to public policy because it would prevent Canada Life from seeking relief in this Court if it is determined that the Ontario Court does not have jurisdiction over its claims. *Id.* at 10. Canada Life explains that it filed the present action to avoid a situation in which Converium successfully challenged the Ontario Court's jurisdiction and then asserted that Canada Life was barred by the FAA's statute of limitations from seeking relief in this Court. *Id.*

11

2.      **Applicable Law**

International comity permits a district court to stay or dismiss an action over which it has

subject matter jurisdiction in deference to a parallel proceeding in a foreign country.  *Hay*

*Acquisition*, 2005 U.S. Dist. LEXIS 24490, at *34*; see also, Elly Gross v. German Found. Indus.*

*Initiative*, 456 F.3d 363, 392 (3d Cir. 2006) ("Generally, United States courts . . . will defer to

proceedings taking place in foreign countries.").  To determine whether international comity

warrants a stay or dismissal, a court should consider whether the foreign country has jurisdiction

over the actions, *Philadelphia Gear Corp. v. Philadelphia Gear, S.A.*, 44 F.3d 187, 194 (3d Cir.

1994); whether the actions are parallel, *Hay Acquisition*, 2005 U.S. Dist. LEXIS 24490, at *34-

35; whether there exist "extraordinary circumstances" justifying the stay or dismissal, *Id.* at *37-

38; and whether the United States' public policy militates against a stay or dismissal,

*Philadelphia Gear*, 44 F.3d at 191.

Two actions are parallel when both involve substantially the same parties litigating

substantially the same issues.  *Hay Acquisition*, 2005 U.S. Dist. LEXIS 24490, at *35; *see also*

*Int'l Bus. Software Solutions*, *Inc. v. Sail Labs Tech, AG.*, 440 F. Supp. 2d 357, 364 (D.N.J.

2006) (actions are parallel when there is a substantial likelihood that foreign action will resolve

all claims presented before the court).  Further, the "extraordinary circumstances" a court should

consider include: "(1) the desirability of avoiding duplicative litigation, (2) the inconvenience of

the domestic forum, (3) the governing law, (4) the order in which jurisdiction was obtained in

each forum, (5) the relative progress of each proceeding, and (6) the contrived nature of the

domestic claim."  *Hay Acquisition*, 2005 U.S. Dist. LEXIS 24490, at *37-38; *see also Int'l Bus.*

*Software Solutions*, 440 F. Supp. 2d at 364-65 (applying *Hay Acquisition* test and holding that

"extraordinary circumstances" warrant dismissal of domestic action in deference to parallel action in Austria).

### 3.    International Comity Warrants a Stay

International comity applies in the present action, warranting a stay.  The parties have not challenged this Court's subject matter jurisdiction over the present action.  Contrary to Canada Life's assertion, this Court will not decline to apply international comity based on a possibility that its jurisdiction will be challenged in the future.

Similarly, the parties have not challenged the Ontario Court's jurisdiction either. Converium concedes that the Ontario Court has subject matter jurisdiction over the action pending before it as well as the present action.  (Reply Brief at 12-13).  Converium has appeared before the Ontario Court numerous times without objecting to its jurisdiction.  *Id.* at 12. Currently, it appears that the Ontario Court does have jurisdiction, and the mere possibility that Converium would mount a successful opposition to that Court's jurisdiction is insufficient to prevent the application of international comity.

The present action and the Canada action are parallel because they involve the same parties and the same issues.  Namely, in both actions, Canada Life is suing Converium.  The issues presented are whether Mr. Huggins should be discharged as the umpire and a new arbitration be ordered, whether the Final Award should be vacated and what is the legal situs of the arbitration.

Also, the majority of *Hay Acquisition's* "extraordinary circumstances" militate in favor of a stay:

13

(1)     Duplicative litigation: Converium argues that because the Canada action and the present action are parallel, permitting both to proceed simultaneously would waste resources.  (Converium Brief at 18).  Canada Life argues that it filed the present action not to waste resources, but to preserve its right to proceed in the forum deemed to have jurisdiction over its claims.  (Canada Life Brief at 8).  This factor militates in favor of a stay, because a stay will save resources, while preserving Canada Life's ability to litigate its claims in this Court at a later date.

(2)     Inconvenience of domestic forum: Converium argues that Canada is the more convenient forum "since the proceedings are already going forward in Ontario and the parties have demonstrated the ability of their counsel and witnesses to appear in Ontario."  (Converium Brief at 18).  Canada Life argues that Converium has already retained local counsel in New Jersey.  Also, the Canadian action is set for trial, while the New Jersey action is a summary proceeding and, as such, does not require extensive appearances of the parties, counsel and witnesses.  (Canada Life Brief at 9).  Both parties' arguments are meritorious.  Therefore, the Court concludes that neither forum is substantially more convenient than the other.  This factor is neutral.

(3)     The governing law: Converium argues that there is no substantive difference between Canadian law and American law that would justify permitting these actions to proceed simultaneously.  (Converium Brief at 19).  Canada Life has not addressed this issue.  (Canada Life at 9).  This factor militates in favor of a stay because Canada Life will be able to obtain adequate relief in the Ontario Court.

14

(4)     Order of jurisdiction: Converium argues that the Ontario Court obtained

jurisdiction over Canada Life's claims three months prior to this Court.

(Converium Brief at 19).  Canada Life argues that this factor is irrelevant because

of the potential jurisdictional challenge.  As previously discussed, pages 13-14

*supra*, the potential of a future jurisdictional challenge does not militate against

permitting the Ontario Court to resolve the issues that were pending before it three

months longer than before this Court.  This factor militates in favor of a stay.

(5)     Relative progress of each proceeding: Converium argues that the Canada action

has progressed quickly and is scheduled for trial in the next few months.

(Converium Brief at 19).  Canada Life argues that the Canada action has not

significantly progressed, as evidenced by the fact that Converium had not yet filed

a substantive response.  (Canada Life Brief at 9).  Conversely, the present action is

a summary proceeding; therefore, it is bound to progress quickly.  *Id*.  Regardless

of whether Converium has yet to file a substantive response, the Canada action

has substantially progressed and is scheduled for trial in September.  While this

action may progress quickly, it is still in the early stages of litigation.  Therefore,

this factor militates in favor of a stay.

(6)     Domestic claim: Converium argues that while the present action may have been

contrived when originally filed, it has since become more complex as Canada Life

has attempted to use it to obtain discovery for use in the Canada action.

(Converium at 19).  Canada Life argues that its sole purpose in bringing the

present action was to preserve its right to seek relief before this Court.  (Canada

Life Brief at 9).  It argues that it has not used the present litigation for improper purposes alleged by Converium.  The present action will likely entail considerable discovery since Canada Life seeks to prove that Converium and Mr. Huggins improperly conducted themselves during the arbitration.  *See* Petition to Vacate Arbitration Award.  Therefore, this factor militates in favor of a stay.

The stay, rather than dismissal, of the present action alleviates Canada Life's public policy concern.  If Converium challenges the Ontario Court's jurisdiction, Canada Life would not be time barred from litigating its claims in this Court.  To the extent that any claims or jurisdictional issues remain unresolved at the conclusion of the Canada litigation, the stay will be lifted and the Court will address these.  *See, e.g., Hay Acquisition*, 2005 U.S. Dist. LEXIS 24490, at *40 ("The Court will exercise its discretion to stay, rather than dismiss, the instant litigation in order to facilitate the resolution of any claims against [the defendant] that remain at the conclusion of the litigation in Germany.").

## III.    CONCLUSION

For these reasons, Converium's motion to dismiss is denied.  Service on Willkie Farr is quashed and Canada Life is directed to effect service on Converium in accordance with Rule 4(h) within fifteen (15) days from the date herewith.  This action is stayed pending the resolution of the parallel Canada action.  An appropriate form of order is filed herewith.

Dated: June 12, 2007

         s/ Garrett E. Brown, Jr.
         GARRETT E. BROWN, JR., U.S.D.J.